Loren K. Peck (#16321)
PECK BAXTER WATKINS & BAILEY, LLC
399 North Main Street, Suite 300
Logan, Utah 84321
Telephone: (435)787-9700
Facsimile: (435)787-2455
lpeck@peckbaxter.com
*Attorney for Plaintiff*

UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| LINDSEY EVANS, an individual,<br><br>Plaintiff,<br><br>v.<br><br>GLYMED PLUS, LLC<br><br>Defendant. | **SECOND AMENDED COMPLAINT AND JURY DEMAND**<br><br>Civil No. 2:23-cv-00027<br><br>Judge: Dale A. Kimball |

This amended complaint is being filed pursuant to state and federal rules of civil procedure (Rule 15(a)(2)) with written consent of Glymed Plus, LLC, given via email on May 15, 2024. Comes now Plaintiff Lindsey Evans, by and through undersigned counsel, and alleges against the Defendant GLYMED PLUS LLC as follows:

**PARTIES, JURISDICTION, VENUE**

1. At all times relevant to this matter, Plaintiff was a resident of Sandy, Utah.

2. At all times relevant to this matter, Glymed Plus, LLC (hereinafter "Glymed") was a Utah company with its administrative office at 867 East 2260 S Provo, UT 84606.

3. This case was originally filed in the Fourth Judicial District Court in and for Utah County, State of Utah, Case No. 220100251, and was removed to this Court pursuant to 28 U.S.C. §§ 1331, 1367, 1441, and 1446.

## GENERAL ALLEGATIONS

4. Glymed sells skin care products.

5. Glymed offered to enter into an agreement with Plaintiff where Plaintiff would solicit sales for Glymed and Glymed would compensate Plaintiff with: (i) non-exempt, straight commission with a monthly guarantee of $3,000.00; (ii) a commission of 8% on all sales in Plaintiff's assigned territory (paid monthly), which would instead become 10% if Plaintiff increased sales by 25% to 39.99% over the same month from the previous year or 12% if Plaintiff increased sales by 40% or more over the same month from the previous year; (iii) an additional 2% commission on all orders during the first 30 days after a new account was opened.

6. Plaintiff accepted Glymed's offer, and Mrs. Evans began to solicit sales for Glymed as an account manager on or around October 23, 2018.

7. From October 23, 2018 to November, 2021, Mrs. Evans increased sales in her territory.

8. From October 23, 2018 to November, 2021, Mrs. Evans was never the subject of any discipline at Glymed.

9. On or around June 28, 2021, Mrs. Evans informed Barry Thomas, her supervisor at the time, that she was pregnant and that she would be taking leave to deliver and care for her newborn.

Second Am. Complaint and Jury Demand – page  2
*Evans v. Glymed Plus LLC et al.*
4865-2395-8974

10. Mr. Thomas told Mrs. Evans that he needed to ask Mr. McDaniel what the maternity leave policy was.

11. After Mr. Thomas spoke with Mr. McDaniel, Mr. Thomas informed Mrs. Evans that Mrs. Evans could take up to 12 weeks maternity leave and that Mrs. Evans would still be earning sales based on her commission, as usual.

12. Mr. Thomas told Mrs. Evans that he spoke with the President of Glymed, Jon McDaniel, about Mrs. Evans' pregnancy.

13. Mr. McDaniel called Mrs. Evans on the day Mrs. Evans went to the hospital to give birth.

14. Mr. McDaniel asked Mrs. Evans what her plan was for her territory while she was out.

15. Mr. McDaniel told Mrs. Evans that he had heard that Mrs. Evans had a hard time getting pregnant.

16. On or around August 25, 2021, Glymed purported to change its leave policy to allow only ten (10) days of "Unpaid Time."

17. The new policy, as distributed to Mrs. Evans, did not define "unpaid time" and did not mention maternity leave.

18. No one at Glymed communicated to Mrs. Evans that she was allowed anything less than 12 weeks of maternity leave.

19. On October 20, 2021, Mrs. Evans delivered her baby and began taking maternity leave.

Second Am. Complaint and Jury Demand – page 3
*Evans v. Glymed Plus LLC et al.*
4865-2395-8974

20. On or around October 17, 2021, Barry Thomas was replaced by Nikki Helferich.

21. Ms. Helferich became Mrs. Evans new supervisor.

22. On or around November 11, 2021, Ms. Helferich called Mrs. Evans to tell her that Mr. McDaniel and Jazmyn Hall kept asking when Mrs. Evans was returning to work.

23. During that phone call, Ms. Helferich informed Mrs. Evans that Glymed was going to require Mrs. Evans to begin traveling once a month for work.

24. Between November 11 and November 19, Ms. Helferich pressured Mrs. Evans to return to work, including calling Mrs. Evans to ask what classes Mrs. Evans would be doing in December and January and calling to tell Mrs. Evans that others at Glymed had come back from leave more quickly than Mrs. Evans.

25. Mrs. Evans took maternity leave from October 20 to November 24, 2021.

26. Mrs. Evans worked from home during the last week of November until her constructive discharge in December, 2021.

27. In the final week of November, 2021, Mrs. Evans made significant sales.

28. On December 6, 2021, Mrs. Evans found that her desk had been emptied.

29. After returning to work, Glymed made Mrs. Evans' work difficult by refusing to transfer calls to her cell phone, among other things.

30. On December 8, 2021, Mrs. Evans tested positive for Covid-19, and she requested leave for the rest of the week.

Second Am. Complaint and Jury Demand – page 4
*Evans v. Glymed Plus LLC et al.*
4865-2395-8974

31. Glymed approved Mrs. Evans' request for leave only on December 8th and denied the remainder, requiring her to be back to work on December 9, 2021 despite her still being sick with Covid-19.

32. Around the beginning of December 2021, Glymed assigned Mrs. Evans to a different sales territory that was less favorable.

33. On December 17, 2021, Glymed provided Mrs. Evans with a commission breakdown for the month of November, 2021.

34. The commission breakdown showed that Glymed had withheld about half of Mrs. Evans' November commission pay.

35. Glymed's reason for withholding about half of Mrs. Evans' commissions was "due to extended leave."

36. There was nothing in the written agreement or elsewhere that allowed Glymed to withhold commissions from sales made by Mrs. Evans.

37. When Mrs. Evans confronted Mr. McDaniel about the withheld pay, Mr. McDaniel told Mrs. Evans that what he had given Mrs. Evans was in good faith and that he shouldn't have paid her what he did.

38. Glymed refused to pay Mrs. Evans her full commission for the month of November, 2021.

39. By reducing Mrs. Evans' compensation by about one-half, in combination with the other negative treatment, Glymed created a working environment so unusually adverse to Plaintiff that a reasonable person in her position would have felt compelled to resign.

Second Am. Complaint and Jury Demand – page 5
*Evans v. Glymed Plus LLC et al.*
4865-2395-8974

40. Glymed knew that cutting Plaintiff's pay by around one-half would be an intolerable working condition for a reasonable person.

41. Glymed intended to force Plaintiff's resignation by withholding around one-half of Plaintiff's pay.

## FIRST CAUSE OF ACTION
### (Wrongful Termination in violation of public policy)

42. Plaintiff incorporates the preceding paragraphs by reference.

43. Glymed constructively discharged Plaintiff.

44. By reducing Plaintiff's pay by about one-half, Glymed created a working environment so unusually adverse to Plaintiff that a reasonable employee in her position would have felt compelled to resign.

45. Glymed knew that treating Plaintiff as it did, and cutting Plaintiff's pay by around one-half would be an intolerable working condition for a reasonable person.

46. Glymed breached its employment with Plaintiff by refusing to compensate her fully under the employment agreement.

47. Glymed intended to force Plaintiff's resignation by treating her as it did and by withholding around one-half of Plaintiff's pay.

48. At the time Glymed constructively discharged Plaintiff, clear and substantial public policy existed that protected an employee's right to care for herself and her newborn after childbirth, free from discrimination or retaliation.

49. Specifically:

Second Am. Complaint and Jury Demand – page  6
*Evans v. Glymed Plus LLC et al.*
4865-2395-8974

      a.      The federal Family Medical Leave Act, 29 U.S.C. § 2601 et seq., requires employers to give up to 12 weeks of leave per year for pregnancy and/or childbirth;

      b.      The Utah Antidiscrimination Act, U.C.A. § 34A-5-106(1)(a)(i)(D), (1)(g)(i), represents a clear and substantial public policy favoring reasonable accommodations for pregnancy, child birth, breastfeeding, or related conditions, and against firing an employee on the basis of pregnancy or childbirth;

      c.      The federal Pregnancy Discrimination Act of 1978, which amended Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., represents a clear and substantial public policy against altering aspects of employment, including firing, job assignments, benefits, and leave, on the basis of pregnancy, childbirth, or related conditions.

      d.      The Utah Antidiscrimination Act represents a clear and substantial policy in favor of providing reasonable accommodations to employees for pregnancy, child birth, breastfeeding, and related conditions. *See* U.C.A. § 34A-5-106(1)(g).

50.      Plaintiff's pregnancy, childbirth, and leave were protected by the public policy represented in state and federal laws.

51.      By becoming pregnant, giving birth, and taking leave to care for herself and her newborn, Plaintiff brought the public policies described above into play.

52.      Plaintiff's conduct, including becoming pregnant, giving birth, and taking leave to care for herself and her newborn, was causally connected Glymed's treatment of Plaintiff following her childbirth and leave, including withholding compensation.

Second Am. Complaint and Jury Demand – page 7
*Evans v. Glymed Plus LLC et al.*
4865-2395-8974

53. Glymed's treatment of Plaintiff following her childbirth and leave, including withholding compensation, created a working environment so unusually adverse to Plaintiff that a reasonable employee in her position would have felt compelled to resign.

54. Glymed knew that cutting Plaintiff's pay by around one-half would be an intolerable working condition for a reasonable person.

55. Glymed intended to force Plaintiff's resignation by withholding around one-half of Plaintiff's pay.

56. Glymed's constructive discharge of Plaintiff in violation of public policy caused damages to Plaintiff, including but not limited to back-pay, front-pay, consequential damages, and non-economic damages.

### SECOND CAUSE OF ACTION
(Discrimination - Title VII)

57. Plaintiff incorporates the preceding paragraphs by reference.

58. The Civil Rights Act of 1964 § 7, 42 U.S.C. § 2000e et seq. (Title VII) forbids discrimination and retaliation on the basis of pregnancy, childbirth, or related medical conditions.

59. Defendant discriminated against Plaintiff by treating her less favorably than others who had not recently given birth.

60. Defendant discriminated against Plaintiff by assigning her new tasks which they knew would be difficult for her to accomplish with a newborn.

61. Defendant discriminated against Plaintiff by withholding around half of Plaintiff's November 2021 commission and assigning her to a less favorable sales territory.

Second Am. Complaint and Jury Demand – page 8
*Evans v. Glymed Plus LLC et al.*
4865-2395-8974

62. Glymed's treatment of Plaintiff was causally related to the Plaintiff having recently given birth.

63. The actions of Defendant have had a profound and devastating impact on Plaintiff and her family.

64. Plaintiff's experience with childbirth was marred by constant pressure from Defendant to continue working, by criticism that she was not productive enough while caring for her baby on leave and partial leave, and by the constructive discharge of Plaintiff's employment by withholding around half of her commission earnings.

65. Glymed's discriminatory actions caused Plaintiff to suffer damages including but not limited to compensatory damages, non-economic harms suffered by Plaintiff, including emotional distress, mental anguish and loss of enjoyment of life.

### THIRD CAUSE OF ACTION
**(Breach of Contract)**

66. Plaintiff incorporates the preceding paragraphs by reference.

67. Glymed offered to compensate Plaintiff for her labor on a commission basis.

68. In an offer letter, Glymed offered to compensate Plaintiff for her labor through: (i) non-exempt, straight commission with a monthly guarantee of $3,000.00; (ii) a commission of 8% on all sales in Plaintiff's assigned territory (paid monthly), which would instead become 10% if Plaintiff increased sales by 25% to 39.99% over the same month from the previous year or 12% if Plaintiff increased sales by 40% or more over the same month from the previous year; (iii) an additional 2% commission on all orders during the first 30 days after a new account was opened.

Second Am. Complaint and Jury Demand – page 9
*Evans v. Glymed Plus LLC et al.*
4865-2395-8974

69.   Plaintiff accepted Glymed's offer.

70.   Plaintiff performed the agreement by laboring for Glymed.

71.   Glymed breached the contract by failing to pay Plaintiff her commissions at the agreed-upon rate.

72.   Glymed breached the contract by failing to pay Plaintiff's full commission on Plaintiff's REGEN Retail sales.

73.   Upon information and belief, Glymed only paid Plaintiff around 5% commission on her REGEN Retail sales.

74.   Glymed did not calculate or pay Plaintiff for increases in sales over the same month in the previous year.

75.   Glymed failed to properly calculate Plaintiff's commission pay, and paid her less.

76.   After Glymed unilaterally changed the compensation structure of account managers, and upon information and belief, Glymed still failed to pay according to their agreement.

77.   Plaintiff suffered damages as a result of Glymed's breach.

## FOURTH CAUSE OF ACTION
**(Breach of Good Faith and Fair Dealing)**

78.   The above-stated allegations are incorporated by reference.

79.   The parties did not, and could not feasibly reduce every understanding to a stated term in the express language of the employment agreement.

80.   Nevertheless, inherent in the agreement was a duty to deal fairly and to perform the contract in good faith.

Second Am. Complaint and Jury Demand – page  10
*Evans v. Glymed Plus LLC et al.*
4865-2395-8974

81. Inherent in the agreement was a duty to refrain from actions that would deprive or harm the other's ability to obtain the benefits of the bargain.

82. To the extent Glymed retained contractual power or discretion regarding the payment or withholding of commission pay to Plaintiff, Glymed wrongfully exercised that power or discretion in an unreasonable way and for a reason inconsistent with Plaintiff's justified expectations.

83. To the extent Glymed retained contractual power or discretion regarding the amount of commission to pay Plaintiff on her REGEN retail sales, Glymed wrongfully exercised that power or discretion in an unreasonable way and for a reason inconsistent with Plaintiff's justified expectations when it only paid around 5% commission for those sales.

84. Glymed breached the agreement's inherent duty of good faith and fair dealing when it refused to pay Plaintiff the full amount of the commissions she had earned.

85. Glymed harmed Plaintiff's ability to enjoy her benefits and rights under the contract by refusing to pay around half of Plaintiff's earned commissions because Plaintiff had taken leave.

86. Glymed breached the agreement's inherent duty of good faith and fair dealing by failing to calculate and apply increased commissions based on growth of Plaintiff's territory by certain percentages over the month the year prior.

87. Plaintiff suffered damage and loss as a result of Glymed's breaches of the duty of good faith and fair dealing.

## SIXTH CAUSE OF ACTION
**(Violation of Utah wages laws)**

Second Am. Complaint and Jury Demand – page 11
*Evans v. Glymed Plus LLC et al.*
4865-2395-8974

88. Plaintiff incorporates the preceding paragraphs by reference.

89. This claim is pleaded to the extent that Plaintiff's compensation is considered "wages" under the Utah Payment of Wages Act and/or that Glymed was considered Plaintiff's employer.

90. Glymed failed to pay Plaintiff's wages semimonthly or biweekly as required by the Utah Payment of Wages Act ("UPWA") when Glymed failed to pay Plaintiff's full wage on or around December 01, 2021.

91. Glymed failed to pay Plaintiff's wages when Glymed paid Plaintiff less than it had agreed to pay.

92. Glymed failed to provide Plaintiff with a statement showing the total amount of each deduction from her paycheck as required by the UPWA. Specifically, Glymed failed to provide a pay statement on or around December 01, 2021 showing deductions from her paycheck.

93. Glymed wrongfully deducted pay from Plaintiff's wages in November, 2021 without any agreement or law allowing that deduction.

94. Glymed failed to pay Plaintiff's full wages within 24 hours of Plaintiff's separation from payroll as required by the UPWA.

95. Plaintiff made a written demand for unpaid wages.

96. Glymed failed to pay Plaintiff's full wages within 24 hours of Plaintiff's written demand as required by the UPWA.

97. Glymed is liable for Plaintiff's unpaid wages under the UPWA.

Second Am. Complaint and Jury Demand – page  12
*Evans v. Glymed Plus LLC et al.*
4865-2395-8974

98.     Glymed is liable for penalties for payment of late wages at a rate of 2.5% of the total amount of late-paid wages under the UPWA.

99.     Glymed is liable for all amounts improperly deducted from Plaintiffs paychecks under the UPWA.

100.    At all relevant times, Glymed acted as Plaintiff's employer.

## JURY DEMAND

Plaintiff requests a trial by jury.

WHEREFORE, Plaintiff prays for judgment against Glymed as follows:

A.  For judgment against Glymed in an amount to be determined at trial for Plaintiff's economic and noneconomic damages;

B.  For reasonable backpay;

C.  For compensatory and punitive damages;

D.  For pre-judgment and post-judgment interest;

E.  For attorney's fees, expenses, and costs incurred in bringing and maintaining this action pursuant to U.C.A. § 34-27-1; and

F.  For such other relief as the Court deems just and appropriate under the circumstances.

DATED this 20th day of May, 2024.

PECK BAXTER WATKINS & BAILEY, LLC

/s/ Loren K. Peck
Loren K. Peck
*Attorney for Plaintiff*

Second Am. Complaint and Jury Demand – page 13
*Evans v. Glymed Plus LLC et al.*
4865-2395-8974

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 20th day of May 2024, I caused a true and correct copy of the foregoing **SECOND AMENDED COMPLAINT AND JURY DEMAND** to be delivered to the following via the electronic filing system (EFC):

David P. Williams
Scott A. Wiseman
Snell & Wilmer, LLP
15 W South Temple, Suite 1200
Salt Lake City, UT 84101

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ *Brooklyn Burnard*
Brooklyn Burnard, Paralegal

Second Am. Complaint and Jury Demand – page 14
*Evans v. Glymed Plus LLC et al.*
4865-2395-8974